UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR SALGADO,<br><br>    Petitioner,<br><br>  vs.<br><br>DAVID LONG,<br><br>    Respondent. | No. 2:13-cv-2350-TLN-EFB P<br><br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a state prisoner proceeding without counsel with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a disciplinary conviction that he received in 2012 for conspiracy to introduce controlled substances into the prison for the benefit of a prison gang. He seeks federal habeas relief based on the Fourteenth Amendment Due Process Clause. Upon careful consideration of the record and the applicable law, the undersigned recommends that petitioner's application for habeas corpus relief be denied.

**I. Background**

On June 6, 2012, Correctional Officer (C/O) T.S. Harper wrote a rules violation report (RVR) charging petitioner with "conspiracy to introduce controlled substance," in violation of Cal. Code Regs. tit. 15, § 3016(c) ("Inmates shall not distribute . . . any controlled substance). ECF No. 1 at 39. In the RVR, C/O Harper described a lengthy investigation by prison authorities into the importation of controlled substances into Deuel Vocational Institution (DVI) by nine

1

inmates, including petitioner, and two civilians. *Id.* at 39-43. C/O Harper described numerous intercepted telephone conversations between one of these nine inmates, Juarez, and his wife, Hernandez. *Id.* C/O Harper opined that, based on his experience, these telephone calls evidenced a conspiracy to import narcotics and cell phones into DVI. *Id.* In one of these telephone conversations, Hernandez told Juarez, "they want to talk to you and if you need minutes, let them know, ask don't be shy." *Id.* at 43. In response, inmate Juarez asks, "Loco or Boxer?" *Id.* C/O Harper opined in the RVR that these remarks had the following meaning:

> Inmate JUAREZ is to call the inmates inside using the cell phone. Inmate JUAREZ wants to know if it was "Loco" (identified as Inmate ANDRADE, K-08488 housed in H-213) or "Boxer" (identified as Inmate SALGADO, P-92839 housed in H-213.)

*Id.*

In the RVR, C/O Harper also described information he received from a confidential informant (CI). That information identified eight inmates, including petitioner, "as conspiring to introduce controlled substances into DVI for the purpose of Distribution on behalf of the Mexican Mafia (EME) prison gang." *Id.* After the investigation was completed, petitioner was placed in Administrative Segregation pending the completion of the disciplinary process. *Id.* at 48.

Prior to the disciplinary hearing on the RVR, petitioner requested and was assigned an investigative employee (IE). *Id.* at 44.[1] On July 6, 2012, the IE interviewed petitioner regarding the charge. *Id.* Petitioner stated, "I've been in Ad-Seg for three (3) months for nothing. I also, requested [sic] Officer Harper and Inmate JUAREZ to be at the hearing." *Id.* The IE asked petitioner a series of specific questions, as follows:

> Q. Did you contact anybody through a cell phone while living in Minimum Facility?
>
> A. No.
>
> Q. Did you talk to anybody regarding receiving, storing and distributing drugs?
>
> A. No.

---

[1] Authorities determined that the matter did not meet the criteria for the assignment of a staff assistant and none was assigned. *Id.* at 44, 53.

        Q. Do you have a cell phone and is your aka "Boxer?"

        A. No. I do not have a cell phone. Yes. My aka is "Boxer."

*Id.* at 44-45.

The IE also asked S/O Harper the following specific questions, which were apparently formulated by petitioner:

        Q. Was the C-1 interview by yourself only?

        A. No.

        Q. How did you go about to identified me as the person they mentions on the phone conversation?

        A. Through investigations.

        Q. Why am I being able as an associate of a Prison Gang when there is no established fact to support this?

        A. Through investigations.

        Q. What physical evidence was found to involve me in this case?

        A. Nothing physical.

        Q. If the credibility of your suppose confidential was so positive, why did it take 49 days, to issue new lock up order and RVR?

        A. Through investigations.

        Q. Other than your assignments and what the C-1 supposedly said about me, what other mean of evidence was their found to link me in this matter?

        A. He was identified through confidential phone calls and investigations.

*Id.* at 45.

The IE also interviewed inmate Juarez. Juarez stated, "Inmate SALGADO and Inmate ANDRADE are in Ad-Seg for no reason. They have nothing to do with the 115 write-up." *Id.* The IE asked Inmate Juarez the following specific questions formulated by petitioner:

        Q. Did I ever contact you or your wife for anything?

        A. No.

        Q. Did you ever give me your wife number?

        A. No.

> Q. Am I the "Boxer" you mentioned in the conversation you had with your wife on March 22?
>
> A. No.

*Id.*

The disciplinary hearing on the RVR was held on July 18, 2012. *Id.* at 53. Petitioner appeared at the hearing and stated he was in good health and ready to proceed. *Id.* Petitioner acknowledged that he had received copies of all applicable reports to be used as evidence against him at least twenty-four hours in advance of the hearing. *Id.* All time constraints were met. *Id.*

Petitioner pled not guilty to the charge, stating, "I have nothing to do with this and I don't know anyone of the other people involved besides my cellie." *Id.* at 54. The C/O asked petitioner several questions. Among other things, petitioner stated that: (1) his moniker was "Boxer;" (2) he was in "good standing with the Southerners;" (3) he was not associated with the Mexican mafia; (4) he knew inmate Juarez; (5) he never talked to Hernandez, Juarez's wife; (6) he was "pretty sure" he never discussed bringing drugs into the institution; (7) he did not use drugs; (8) he did not refuse to provide a urine test after his arrest, but "asked for water to be able to urinate;" and (9) he previously had a cell phone while he was in Ironwood State Prison. *Id.* at 54-55.

Petitioner questioned C/O Harper at the disciplinary hearing, as follows:

> Q. How did you identify me as the person involved?
>
> A. Through the investigation, C-File and Confidential Informant.
>
> Q. Other that [sic] your assumptions, what makes me an associate of a prison gang?
>
> A. You're identified as a Mesa member by the Confidential Informant.

*Id.* at 55.

Also introduced into evidence at the disciplinary hearing was information provided by the CI, which reflected that petitioner was involved in a conspiracy to introduce controlled substances into the institution. *Id.* at 56. The information provided by the CI was deemed to be reliable because "part of the information provided by the source was corroborated through investigation

4

1   and the source incriminated himself/herself in a criminal activity at the time of providing the
2   information." *Id.*

3   Petitioner was found guilty of a violation of Cal. Code Regs. tit. 15, § 3016(c);
4   specifically "conspiracy to introduce controlled substance into a state prison for the purpose of
5   distribution on the behalf of the Mexican Mafia Prison Gang, a Division 'A-2' offense." *Id.* The
6   guilty finding was based on the following evidence and documents: (1) the allegations by C/O
7   Harper contained in the RVR; (2) the contents of a confidential memorandum authored by C/O
8   Harper which indicated that a reliable confidential source identified petitioner as a participant in a
9   conspiracy to introduce and distribute narcotics into DVI for the benefit of the Mexican Mafia
10  Prison Gang; (3) telephone calls heard by C/O Harper which corroborated the information
11  provided by the confidential source(s); (4) the substance of the telephone call between inmate
12  Juarez and his wife Hernandez, wherein Hernandez mentioned "Boxer;" (5) information
13  contained in the confidential memorandum to the effect that petitioner was "one of the three (3)
14  EME associates who are given authority to control a General Population prison facility on behalf
15  of the EME;" (6) the SHO found petitioner's testimony at the disciplinary hearing to be
16  "deceptive, evasive and unreliable," especially when petitioner stated that he had never spoken to
17  Hernandez; (7) petitioner's testimony at the disciplinary hearing that his moniker is "Boxer,"
18  which corroborated information received in the telephone conversations between Juarez and his
19  wife; (8) petitioner's testimony that he had a cell phone while incarcerated in Ironwood State
20  Prison, which bolstered the SHO's belief "that inmate SALGADO was conspiring to facilitate the
21  purchase of controlled substances for distribution within the secured perimeter of DVI via cellular
22  phone from his assigned housing;" (9) the SHO's belief that if petitioner was innocent of having
23  drugs in his system, he would have agreed to provide a urine sample instead of asking for water;
24  and (10) "Inmate SALGADO's testimony during the hearing, the SHO found to be evasive, vague
25  and lacking in credibility." *Id.* at 57-58. The SHO also relied on:

> The evidence which includes the Rules Violation Report Log #12-05-70-P authored by Correctional Officer T. Harper, Inmate Salgado's answers to the questions posed by the SHO during the hearing, clearly indicate Inmate Salgado played a vital role in the conspiracy to introduce controlled substances and other contraband

5

        into Deuel Vocational Institution.  Additionally, the SHO finds the conspiracy involved a network of individuals, most of whom are associated with the Mexican Mafia Prison Gang, who were successful in planning and carrying out the introduction of controlled substance into CVI for the benefit of the Mexican Mafia. Therefore, the preponderance of evidence does support the charge of "conspiracy to introduce controlled substance into a state prison for the purpose of distribution on the behalf of the Mexican Mafia Prison Gang.

*Id.* at 58.

Petitioner was assessed 180 days loss of time credits; a one year loss of visiting privileges, followed by non-contact visiting for two years; one year of mandatory random drug tests; required attendance at a substance abuse education program; and 30 days loss of other privileges. *Id.* at 58-59.

Petitioner challenged his disciplinary conviction in a petition for writ of habeas corpus filed in the San Juaquin County Superior Court, claiming that "the evidence presented against him at the hearing did not withstand the requirements of the 'some evidence' standard." ECF No. 20-1; ECF No. 20-2 at 2.  The Superior Court determined that petitioner was not entitled to relief on his due process claim because he had not lost any conduct credits as a result of his disciplinary conviction.  ECF No. 20-2 at 4.  However, the court also addressed petitioner's claim on the merits, reasoning as follows:

> In the event Petitioner's claim was reviewable on habeas corpus, "due process, if it were to apply in this context, requires only that there be 'some evidence' to support the findings made at the disciplinary hearing.  (*Hill, supra*, 472 U.S. at p. 457, 105 S.Ct. 2768; *In re Estrada, supra*, 47 Cal.App.4th 1688, 55 Cal. Rptr.2d 506.)" *In re Johnson, supra*, 176 Cal.App.4th at 299.
>
> * * *
>
> At Petitioner's disciplinary hearing, the board was presented with a statement and testimony by Correctional Officer Harper.  C/O Harper had been monitoring phone calls between inmate Juarez and Juarez's civilian wife, Hernandez.  The phone calls revealed that Hernandez was helping Juarez smuggle narcotics and cell phones into the state prison.  The conversations implicated the involvement of several other inmates in this conspiracy.  One phone call revealed that an inmate who goes by the moniker "Boxer" wanted to talk to Juarez and could help Juarez if he needed "minutes." Petitioner admitted he goes by the moniker "Boxer."  Petitioner was also linked to the conspiracy by a confidential informant whose

> reliability was bolstered by incriminating himself and by having some of the information he provided found to be true.
>
> Again, "due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing." *Hill, supra*, 472 U.S. at 457. Here, the evidence before the board was sufficient to meet the "some evidence" standard because there was some basis in fact to support the board's finding that "Boxer"/Petitioner was involved in Juarez and Hernandez's conspiracy to introduce controlled substances into a state prison."

*Id.* at 5-6.

Petitioner next challenged his disciplinary conviction in a petition for a writ of habeas corpus filed in the California Supreme Court. ECF No. 20-2 at 9. The Supreme Court denied that petition, as follows:

> The petition for writ of habeas corpus is denied on the merits. (*See Harrington v. Richter*, (2011) 562 U.S. ___, [131 S.Ct. 770, 785], citing *Ylst v. Nunnemaker* (1991) 501 U.S. 797, 803.)

ECF No. 20-3 at 2.

Petitioner filed a federal habeas petition in this court on November 12, 2013. ECF No. 1. Respondent filed an answer on November 17, 2014. ECF No. 20. Petitioner filed a traverse on January 8, 2015. ECF No. 23.

**II. Standards of Review**

    **A. Habeas Corpus Standards**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

7


>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, ___ U.S. ___, 132 S.Ct. 38 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. *Id.* Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2] *Lockyer v.*

---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

8

*Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 412. *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99. This presumption

may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, ___ U.S. ___, ___, 133 S.Ct. 1088, 1091 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Richter*, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

10

### B. Due Process in the Disciplinary Hearing Context

It is well established that inmates subjected to disciplinary action are entitled to certain procedural protections under the Due Process Clause but are not entitled to the full panoply of rights afforded to criminal defendants. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *see also Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985). The Ninth Circuit has observed that prison disciplinary proceedings command the least amount of due process along the prosecution continuum. *United States v. Segal*, 549 F.2d 1293, 1296-99 (9th Cir. 1977).

An inmate is entitled to no less than 24 hours advance written notice of the charge against him as well as a written statement of the evidence relied upon by prison officials and the reasons for any disciplinary action taken. *See Wolff*, 418 U.S. at 563. The disciplinary hearing must be conducted by a person or body that is "sufficiently impartial to satisfy the Due Process Clause." *Wolff*, 418 U.S. at 571. An inmate also has a right to a hearing at which he may "call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 566. Prison officials may also refuse to call witnesses for "irrelevance" or "lack of necessity." *Id. See also Ponte v. Real*, 471 U.S. 491, 495 (1985). The burden of proving adequate justification for denial of a request to present witnesses rests with the prison officials. *Bostic v. Carlson*, 884 F.2d 1267, 1273 (9th Cir. 1989), *overruled on other grounds* by *Nettles v. Grounds*, 830 F.3d 922 (9th Cir. 2016).

The decision rendered on a disciplinary charge must be supported by "some evidence" in the record. *Hill*, 472 U.S. at 455. A finding of guilt on a prison disciplinary charge cannot be "without support" or "arbitrary." *Id.* at 457. The "some evidence" standard is "minimally stringent," and a decision must be upheld if there is any reliable evidence in the record that could support the conclusion reached by the fact finder. *Powell v. Gomez*, 33 F.3d 39, 40 (9th Cir. 1994) (citing *Hill*, 472 U.S. at 455-56 and *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987)). *See also Burnsworth v. Gunderson*, 179 F.3d 771, 773 (9th Cir. 1990); *Zimmerlee v. Keeney*, 831 F.2d 183, 186 (9th Cir. 1987). Determining whether this standard is satisfied in a particular case does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence. *Toussaint v. McCarthy*, 801 F.2d 1080, 1105 (9th Cir.

1986), *abrogated in part on other grounds* by *Sandin v. Connor*, 515 U.S. 472 (1995).  Indeed, in examining the record, a court is not to make its own assessment of the credibility of witnesses or re-weigh the evidence.  *Hill*, 472 U.S. at 455.  The question is whether there is any reliable evidence in the record that could support the decision reached.  *Toussaint*, 801 F.2d at 1105.

Where a protected liberty interest exists, the requirements imposed by the Due Process Clause are "dependent upon the particular situation being examined."  *Hewitt v. Helms*, 459 U.S. 460, 472 (1983).  The process due is such procedural protection as may be "necessary to ensure that the decision . . . is neither arbitrary nor erroneous."  *Washington v. Harper*, 494 U.S. 210, 228 (1990).  In identifying the safeguards required in the context of disciplinary proceedings, courts must remember "the legitimate institutional needs of assuring the safety of inmates and prisoners" and avoid "burdensome administrative requirements that might be susceptible to manipulation."  *Hill*, 472 U.S. at 454-55.  The requirements of due process in the prison context involve a balancing of inmate rights and institutional security concerns, with a recognition that broad discretion must be accorded to prison officials.  *Wolff*, 418 U.S. at 560-63.

**III.  Petitioner's Claims**

Petitioner claims that his conviction is not supported by sufficient evidence that he was involved in a conspiracy to introduce controlled substances into a state prison.  ECF No. 1 at 19, 20-37.  In particular, he claims that the information provided by the confidential informant was not reliable.  *Id.*  He argues:

> To say that the informant is reliable towards Petitioner as being involved in a conspiracy, where the only implication of Petitioner is a one phone call conversation mentioning a moniker of "Boxer", the hearing office made a giant conjectual [sic] leap that Petitioner was the only Boxer in the whole DVI mainline population.  I believe there [sic] is quite a lack of the "Some Evidence" standard."

*Id.* at 21.  Although petitioner concedes that the confidential report supported the existence of a conspiracy to bring controlled substances into the prison, he argues that there was insufficient evidence he was part of that conspiracy.  *Id.* at 26.  He argues, "a reliable confidential informant could not possibly exist towards Petitioner, since Petitioner was not involved."  *Id.* at 27.

/////

Petitioner also notes that "not all prison inmates who inform on other inmates are telling the truth." *Id.* at 28.

A prison disciplinary committee's determination derived from a statement of an unidentified inmate informant satisfies due process when the record contains some factual information from which the committee can reasonably conclude that the information was reliable. *Zimmerlee*, 831 F.2d at 186. "Reliability may be established by: (1) the oath of the investigating officer appearing before the committee as to the truth of his report that contains confidential information, (2) corroborating testimony, (3) a statement on the record by the chairman of the committee that he had firsthand knowledge of sources of information and considered them reliable based on the informant's past record, or (4) an in camera review of the documentation from which credibility was assessed." *Id.* at 186-87. Additionally, "[p]roof that an informant previously supplied reliable information is sufficient." *Id.* at 187. Cal. Code Regs. tit. 15, § 3321 (c) provides:

> A confidential source's reliability may be established by one or more of the following criteria:
>
> (1) The confidential source has previously provided information which proved to be true.
>
> (2) Other confidential source have independently provided the same information.
>
> (3) The information provided by the confidential source is self-incriminating.
>
> (4) Part of the information provided is corroborated through investigation or by information provided by non-confidential sources.
>
> (5) The confidential source is the victim.

Due process does not require that the identity of a confidential informant be disclosed to an inmate. *Wolff*, 418 U.S. at 566-69.

Here, the SHO found petitioner guilty based in part on statements by a confidential source that petitioner was part of a conspiracy to introduce and distribute narcotics into DVI for the benefit of the Mexican Mafia Prison Gang; that petitioner was a "member/associate of the Mexican Mafia Prison Gang;" and that petitioner "purchased narcotics, cell phones, tobacco.

13

1 ECF No. 1 at 49. Significantly, the information from the confidential source was deemed reliable
2 because it was self-incriminating (Cal. Code Regs. tit. 15, § 3321 (c) (3), and part of the
3 information provided by the source had already proven to be true. (Cal. Code Regs. tit. 15, §
4 3321(c)(4)). *Id.* Specifically,

> The phone conversations between Inmate Juarez and civilian N. Hernandez resulted in the discovery of controlled substances and positive UA's submitted by those involved inmates. Inmate SALGADO and the civilian conspired to introduce controlled substances and other contraband into DVI for the purpose of distribution on the behalf of the Mexican Mafia/EME Prison Gang.
>
> On Monday February 27, 2012, at approximately 1830 hours ISU staff discovered tobacco concealed within the dinner trays from the MSF en route to the Main Kitchen marked with a "P" indicating it belonged to "Paco" (Inmate Bazan, P-73265) who is an associated [sic] of the Mexican Mafia.
>
> The physical evidence discovered by the Officers J. Rey and C. Enos on April 5, 2012, specifically Controlled Substance (Marijuana), corroborates the information provided by the source/sources. There were three (3) cell phones, tobacco, and 9.4 grams of Methamphetamine discovered by other staff members.

*Id.* These findings are sufficient to establish the reliability of the confidential information. *Zimmerlee*, 831 F.2d at 186-87. The court also notes that in addition to the information provided by the confidential source, and as set forth above, the SHO relied on the allegations by C/O Harper contained in the RVR; the telephone conversation between Juarez and Hernandez which referred to an inmate named Boxer; petitioner's admission that his nickname is "Boxer;" the SHO's impression of petitioner's credibility at the disciplinary hearing; the fact that petitioner formerly used a cellphone while in prison; and petitioner's failure to give a urine sample after his arrest.

The determination of the California Supreme Court that petitioner's disciplinary conviction was supported by sufficient evidence is not unreasonable in light of the minimally stringent nature of that standard of proof. As set forth above, it is not the duty of this court to act as the hearing officer and re-determine the nature of petitioner's offenses and punishment. *See Hill*, 472 U.S. at 455. On the contrary, prison administrators are "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are

needed to preserve internal order and discipline and to maintain institutional security." *See Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Under the circumstances presented here, and for the reasons set forth above, the evidence against petitioner was sufficient to support his disciplinary conviction.

Accordingly, for the foregoing reasons, petitioner is not entitled to relief on his due process claim.

**IV. Conclusion**

IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: December 12, 2016.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE